**Prakash H. PATEL and Shobha P. Patel, h/w, Plaintiffs**

v.

**SUN COMPANY, INC. and Lancaster Associates, Defendants.**

**Civ. A. No. 94–4318.**

United States District Court, E.D. Pennsylvania.

Nov. 1, 1994.

---

Craig M. Kellerman, Norristown, PA, for plaintiffs.

John F. Fox, Jr., Lancaster Associates, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiffs filed for a preliminary injunction to keep them in possession of their service station pending the outcome of the underlying litigation under the Petroleum Marketing Practices Act ("PMPA"). Before me to decide is whether a termination of a lease under the PMPA that meets all of the requirements under that statute is unauthorized if prior to the termination the franchisor sold the property without offering it for sale or offering a right of first refusal to the franchisee. After holding an evidentiary hearing I find that Plaintiffs have failed to show the existence of sufficiently serious questions going to the merits to make this a fair ground for litigation under the PMPA. Therefore I will deny the preliminary injunction.

### FINDINGS OF FACT

Defendant Sun Company, Inc. ("Sun") is a refiner and marketer of motor fuels incorporated and existing under the laws of the Commonwealth of Pennsylvania. Defendant Lancaster Associates ("Lancaster") is neither a refiner nor a distributor of motor fuels. Lancaster is not a subsidiary of, and does not have any other relationship with Sun. Plaintiffs, Mr. & Mrs. Patel ("the Patels"), currently operate a Sunoco Station ("the service station") located at 200 Lancaster Avenue, in Wayne, Pennsylvania.

The Patels and Sun first entered into a franchise relationship for the operation of the service station effective August 21, 1978. At that time Sun was the owner of the real estate on which the service station was located. An office building with parking was also located on the same parcel of land at 202 Lancaster Avenue and was owned by Sun. Sun leased the service station at 200 Lancaster Avenue to the Patels under a franchise agreement.

On June 3, 1987 Sun entered into an agreement of sale with Lancaster under which the entire parcel of land comprising both the service station and the office building with parking at 200 and 202 Lancaster Avenue was sold to Lancaster for $5.1 million. Lancaster agreed to lease back the service station to Sun. This underlying lease was to expire on September 30, 1994. Sun in turn subleased the premises to the Patels. The sublease entered into by the Patels and Sun on March 2, 1988 was for a period of three years and specifically stated that Sun's right to grant possession of the premises was subject to an underlying lease which would

expire on September 30, 1994 and might not be renewed at the end of the lease period.

Upon the expiration of the sublease in 1991 the Patels and Sun entered into a second sublease for three years to expire August 21, 1994. On April 28, 1994, 120 days before the expiration of the sublease, Sun sent a letter to the Patels notifying them that their franchise and lease would not be renewed at the end of the term. The reason given for the nonrenewal of the lease was the loss of the franchisor's (Sun's) right to grant possession of the property due to the expiration of the underlying lease. The Patels received this notice from Sun. The underlying lease expired on September 30, 1994, and Sun no longer has a right to lease or sublease the premises.

The Patels have brought suit challenging the forthcoming nonrenewal of their lease based on the prior failure of Sun to offer the property to them for sale or to offer them a right of first refusal when Sun sold the property to Lancaster in 1987. The Patels are now before the court requesting a preliminary injunction to compel Sun and Lancaster to keep them in occupation of the service station while the outcome of the underlying litigation is decided.

### CONCLUSIONS OF LAW

Under the PMPA Sun and the Patels are, respectively, a franchisor and franchisee engaged in a franchise relationship, 15 U.S.C. § 2801(2), (3) & (4). As such, both Sun and the Patels are subject to the requirements of the PMPA.

Under the PMPA a court shall grant a preliminary injunction if: 1) the franchisee shows that his franchise has not been renewed or has been terminated, 2) there exists sufficiently serious questions going to the merits to make such questions a ground for litigation, and 3) the court determines that the hardship imposed on the franchisor by the imposition of a preliminary injunction is less than would be imposed on the franchisee if the injunction were denied, *Id.* § 2805(b)(2). For the following reasons the Plaintiffs have not met the standards for the injunction, *Id.*

The PMPA governs the termination or nonrenewal of a franchise relationship, *Id.* § 2802. Generally, a franchisor may not terminate or fail to renew a franchise agreement, *Id.* § 2802(a). However, this does not give the franchisee a permanent right to the franchise. The PMPA sets out the circumstances under which a franchise may be terminated or nonrenewed at *Id.* § 2802(b)(1), (2) & (3).

If a franchisor decides to terminate or not to renew a franchise relationship because of a decision to sell the property, it must first either make a bona fide offer to sell the premises to the franchisee or offer the franchisee a right of first refusal, *Id.* § 2802(b)(3)(D)(i)(III). If a franchisor does not terminate or fail to renew the franchise relationship the right to an offer of sale or first refusal is not triggered, *Patel v. Sun Ref. & Mktg Co.*, 710 F.Supp. 1023 (E.D.Pa. 1989).

When Sun sold the station to Lancaster it did not terminate or fail to renew the Patels' franchise relationship. After the property was sold to Lancaster the Patels' lease with Sun was renewed twice more for periods of 3 years each. Therefore, Sun had no obligation to offer the Patels a right of first refusal or to offer the property for sale to them.

Although the Patels' franchise agreement was not renewed in 1994, under 15 U.S.C. § 2802(b)(2)(C) Sun gave them the required 120 days notice pursuant to § 2804(a) of the PMPA, and the reason for the nonrenewal, loss of the franchisor's right to grant possession of the premises due to the expiration of an underlying lease, is "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable," 15 U.S.C. § 2802(b)(2)(C) & (c)(4). Furthermore, under a ruling by then Circuit Judge Stephen Breyer, even if I find that the nonrenewal of the underlying lease was due solely to Sun's desire not to renew the lease, that is still a valid reason for nonrenewal of the franchise relationship under the PMPA, *Veracka v. Shell Oil Co.*, 655 F.2d 445 (1st Cir.1981).

Sun complied with the notice requirement of this section both when it a) alerted the Patels in the 1991 sublease that the underlying lease might not be renewed, and b) sent the Patels 120 days notice of the expiration of the underlying lease and the nonrenewal of the franchise relationship on April 28, 1994, *Veracka*, 655 F.2d at 449. The provisions of the PMPA governing termination and nonrenewal of a franchise reflect an effort to prevent unfair franchisor practices, but the exceptions reflect an intent to permit reasonable business judgments by the franchisor, *Veracka* 655 F.2d at 448. Furthermore, the Patels were given seven years notice that their franchise might not be renewed; this is more than an adequate amount of time in which to make other arrangements for their business.

Therefore, because there does not exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation the preliminary injunction must be denied, and I do not have to make a determination of whether or not a balancing of hardships weighs in favor imposing a preliminary injunction.

### ORDER

AND NOW this 1st day of November, 1994, Plaintiff's motion for a preliminary injunction is hereby **DENIED.**